Pearlstein McCullough & Lederman LLP
Georges G. Lederman
William G. Pearlstein
641 Lexington Avenue, Suite 1327
New York, NY 10022
Telephone:  (646) 762-2833
Facsimile:   (212) 634-6311
glederman@pmcounsel.com
wpearlstein@pmcounsel.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                                  :
HICHAM ABOUTAAM,                                  :        Case No. _____
                                                  :
                                 Plaintiff,       :        **ECF CASE**
                                                  :
            - against -                           :
                                                  :
                                                  :
L'OFFICE FEDERALE DE LA CULTURE DE LA             :        **COMPLAINT**
CONFEDERATION SUISSE, Federal Office of           :
Culture of the Swiss Confederation,               :
L'ADMINISTRATION FEDERALE DES DOUANES             :
DE LA CONFEDERATION SUISSE, Federal Customs       :
Administration of the Swiss Confederation, and    :
LA REPUBLIQUE ET CANTON DE GENÈVE,                :
Republic and Canton of Geneva,                    :
                                                  :
                                 Defendants.      :
                                                  :
-----------------------------------------------------------------------x

Plaintiff Hicham Aboutaam ("Plaintiff" or "Hicham"), through his undersigned

counsel, brings this complaint (the "Complaint") for declaratory judgment as to title,

conversion and unjust enrichment against defendants L'Office fédérale de la culture de la

Confédération Suisse (referred to individually as the "Swiss Office of Culture");

L'Administration fédérale des douanes de la Confédération Suisse (referred to individually as the "Swiss Customs Administration"); and La République et canton de Genève (referred to individually as the "Canton of Geneva")[1] (collectively, "Defendants") and allege as follows:

## NATURE OF THE ACTION

1.     The gravamen of this Complaint is the unlawful seizure by the Defendants of approximately 1,200 of Hicham's antiquities which were located in a warehouse and elsewhere in Geneva, Switzerland at the time of their seizure (the "Hicham U.S. Property"). Upon information and belief, the Hicham U.S. Property has a fair market value in the aggregate of approximately USD $90 million.

2.     Hicham is one of the premier international dealers, if not the premier international dealer, of high-value, museum quality antiquities in the world. Together with his brother, Ali Aboutaam, he co-founded Phoenix Ancient Art S.A. ("Phoenix"), a prominent gallery located in Geneva, Switzerland. Hicham manages an affiliated gallery in New York, operated by a New York company d/b/a Electrum ("Electrum"), which acts as the exclusive agent of Phoenix; Ali Aboutaam manages Phoenix's gallery in Geneva. Electrum acts independently and without the consent of Phoenix in securing unrelated consignments and other business opportunities.

3.     Phoenix and Electrum specialize in Greek, Roman and Hellenistic antiquities as well as material from Ancient Egypt and the Near East. Over the years,

---

[1] Unofficially translated as the "Federal Office of Culture of the Swiss Confederation"; the "Federal Customs Administration of the Swiss Confederation"; and the "Republic and Canton of Geneva," respectively.

private collectors and connoisseurs of art and antiquities as well as major museums have purchased objects from Phoenix.

4.      The Defendants violated international law by wrongfully seizing[2] the Hicham U.S. Property at a Geneva warehouse and elsewhere on or about February 24, 2017 and by subsequently failing to pay Hicham just compensation for these objects.[3]

5.      Through their communications with Hicham's counsel, Defendants have failed to assert any proper legal basis for the seizure of the Hicham U.S. Property pursuant to international or Swiss law. Both the Ministère public du canton de Genève (the "Geneva Prosecutor"),[4] which operates pursuant to authority vested by the Canton of Geneva, and the Swiss Customs Administration have asserted that the *Code pénal suisse* (the "Swiss Penal Code") provides the basis for seizure but have failed to cite any provision under that statute to support this assertion. The Geneva Prosecutor and the Swiss Customs Administration attempt to avail themselves of the *Loi fédérale sur le transfert international des biens culturels, LTBC, du 20 juin 2003* (the "LTBC"),[5] Switzerland's law governing

---

[2] The Defendants have not removed the Hicham U.S. Property from the Geneva warehouse and elsewhere in which it is stored. Beginning in February 2017 as explained in detail below, the Defendants took concerted action pursuant to the applicable Swiss statutes against Hicham, "freezing" the Hicham U.S. Property. Because this action amounts to a seizure of the Hicham U.S. Property, this Complaint uses the terms "freeze," "seize," "seizure," and their derivations interchangeably.

[3] Together with the Hicham U.S. Property, the Defendants at the same time also seized 18 antiquities of Greek, Roman and Egyptian origin belonging to Lynda and William Beierwaltes (the "Beierwaltes"), who are citizens of the State of Colorado. The Beierwaltes had consigned their 18 antiquities, which were stored in the same warehouse containing the Hicham U.S. Property, to Phoenix for sale. The Beierwaltes have commenced a parallel action in United States District Court for the District of Colorado, Case Number 1:18-cv-0211-MSK-MEH, asserting causes of action against the Defendants that are similar to those presented in this Complaint. Counsel for Hicham in the instant action is acting a co-counsel, together with the Colorado office of the international law firm Hogan Lovells, to the Beierwaltes in the Colorado action.

[4] Unofficially translated as the "Ministry of Public Affairs of the Canton of Geneva."

[5] Unofficially translated as the "Federal Act on the International Transfer of Cultural Property, CPTA, dated June 20, 2003."

3

the international transfer of cultural property, which the Swiss Office of Culture administers, but have failed to cite any provision under that statute in support of the seizure.

6.      No individual or foreign sovereign, and no other third party, has asserted any claim of ownership whatsoever to the Hicham U.S. Property. Instead, Defendants simply seized the Hicham U.S. Property without valid legal basis or justification. Defendants have expressly stated their intent to investigate whether the objects comprising the Hicham U.S. Property should be returned to their respective countries of origin.[6] This declaration of intent necessarily suggests that Defendants plan to solicit as-yet-unidentified third parties to whom the Hicham U.S. Property will be "repatriated." To put it plainly, Defendants' actions amount to a seizure in search of a crime.

7.      Hicham respectfully seeks (i) a declaratory judgment that title to the Hicham U.S. Property belongs solely to Hicham, because no individual or foreign sovereign or any other third party has asserted any claim of ownership as to the Hicham U.S. Property, and (ii) a judgment in Hicham's favor on his claims of conversion and unjust enrichment against the Defendants, who have expropriated the Hicham U.S. Property for their own political benefit and to Hicham's detriment without just compensation and in clear violation of the LTBC and the underlying 1970 Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property (the "UNESCO Convention").[7]

---

[6] *See infra* para. 39 and n.23.

[7] Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property, Paris, 14 November 1970. The UNESCO Convention is the leading convention governing the international transfer of antiquities and other cultural property. One hundred thirty-seven nations have accepted or acceded to UNESCO and become "State Parties" thereunder, including the United States and Switzerland. United Nations Education, Scientific and Cultural Organization (UNESCO), *States*

8.      This action is ripe for judgment: there now exists an actual and justiciable controversy between the parties that is capable of judicial resolution.

## THE PARTIES

9.      Hicham is a citizen and resident of the State of New York.

10.      Defendant Swiss Office of Culture, whose principal offices are located in Bern, Switzerland, is an administrative unit of the Swiss government's Federal Department of Home Affairs and an instrumentality of the Swiss government. The Swiss Office of Culture is responsible for promoting Swiss culture and preserving Switzerland's cultural heritage. Its mission includes advising and aiding all prosecutions and seizures under Section 7, Article 18 of the LTBC. It also includes an extensive role in the import of cultural property. Specifically, the Office of Culture oversees and regulates the procedures for the import and seizure of cultural artifacts such as the Hicham U.S. Property.

11.      Defendant Swiss Customs Administration, whose principal offices are located in Bern, Switzerland, is an administrative unit of Switzerland's Federal Department of Finance and an instrumentality of the Swiss government. It is responsible for, among other tasks, the control of the import and export of certain goods, border security, and the imposition of customs duties. Pursuant to the LTBC,[8] the Swiss Customs Administration acts at the direction of, and in concert with, the Swiss Office of Culture in matters arising under the LTBC, including the seizure of the Hicham U.S. Property.

---

*Parties: Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property*, *available at* http://www.unesco.org/eri/la/convention.asp?KO=13039&language=E&order=alpha (last visited September 7, 2018).

[8] *See* LTBC Articles 18, 19 and 21.

12.     Defendant Canton of Geneva, a territorial division in Switzerland, vests authority in the Geneva Prosecutor to prosecute criminal acts occurring within the jurisdiction of the Canton of Geneva. Pursuant to the LTBC,[9] the Canton of Geneva acts at the direction of, and in concert with, the Swiss Office of Culture in all prosecutions arising under the LTBC in the Canton of Geneva, including the seizure of the Hicham U.S. Property.

## JURISDICTION AND VENUE

13.     Subject to existing international agreements to which the United States is a party, the Foreign Sovereign Immunities Act ("FSIA") provides an exception to the general immunity from suit granted to foreign states under 28 U.S.C. § 1604 where an agency or instrumentality of the foreign state, which engages in commercial activity in the United States, seizes property held by a United States citizen under circumstances such as those presented in this case without just compensation in violation of international law. 28 U.S.C. § 1605(a)(3). This exception to the FSIA applies here, and thus the Defendants are not immune from suit in this Court.

**A.     Defendants are not immune from suit under 28 U.S.C. § 1605(a)(3).**

14.     This Court has subject-matter and personal jurisdiction over the Defendants under 28 U.S.C. § 1330, because the Defendants are not entitled to immunity under 28 U.S.C. § 1605.

15.     A foreign state and its agencies and instrumentalities are not immune from suit under the FSIA where "rights in property taken in violation of international law are in issue and . . . that property or any property exchanged for such property is owned or

---

[9] *See* LTBC Articles 17, 18, 20 and 21.

6

operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3).

16.     Defendants' seizure of the Hicham U.S. Property without paying just compensation violates international law.

17.     This action concerns rights in the Hicham U.S. Property that were arbitrarily taken from Hicham without paying just compensation.

18.     The Swiss Office of Culture is an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603(b).

19.     The Swiss Customs Administration is an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603(b).

20.     The Canton of Geneva is an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603(b).

21.     Upon information and belief, The Swiss Office of Culture is engaged in commercial activity in the United States, including the following:

     a.     The Swiss Office of Culture coordinates all cultural activities of the Swiss government, including the Swiss National Library, multiple museums and other cultural programs. The Swiss Office of Culture's activities include promoting Swiss culture in the United States for the purpose of boosting economic and cultural exchange between the United States and Switzerland.

     b.     The Swiss Office of Culture, through the multiple national museums it operates, regularly purchases art from United States artists and museums.

     c.    The Swiss Office of Culture, through the multiple national museums it operates, also regularly places exhibits on temporary display in the United States.

     d.    The Swiss Office of Culture also actively promotes Swiss film to American audiences. In 2016, for example, the Swiss Office of Culture entered a film entitled "Iraqi Odyssey" in the United States Academy Awards.

     e.    Each year, the Swiss Office of Culture awards monetary prizes to artists to recognize cultural achievement. The Swiss Office of Culture regularly awards these prizes to artists residing and working in the United States. In 2017, for example, the Swiss Office of Culture awarded a Swiss Art Award to Tobias Madison, who lives and works in New York. Previously in 2016, the Swiss Office of Culture awarded a Swiss Design Award to Christophe Guberan, who lives and works in Boston.

     f.    Through its various cultural activities in the United States, the Swiss Office of Culture promotes Swiss cultural enterprises in the United States. This constitutes commercial activity within the meaning of 28 U.S.C. § 1605(a)(3).

22.    Upon information and belief, the Swiss Customs Administration acts at the direction of, and in concert with, the Swiss Office of Culture in matters arising under the LTBC.

23.    Upon information and belief, the Canton of Geneva acts at the direction of, and in concert with, the Swiss Office of Culture in matters arising under the LTBC in the Canton of Geneva.[10]

_____

[10] Concerted action between these Swiss agencies is required by Swiss law. The LTBC mandates the interagency relationship between the Federal Office of Culture, on the one hand, and the Swiss Customs

24.     The commercial activity of the Swiss Office of Culture is attributable to the Swiss Customs Administration and the Canton of Geneva in this matter because, as explained below, the Swiss Office of Culture has initiated and overseen the seizure of the Hicham U.S. Property. The Swiss Office of Culture administers prosecutions arising under the LTBC, which is the alleged legal basis for seizure of the Hicham U.S. Property. The Swiss Office of Culture invoked the LTBC when it issued the complaint giving rise to the seizure of the Hicham U.S. Property. The Swiss Customs Administration and the Canton of Geneva have effectuated the mandates of that complaint by issuing documentation and implementing the seizure.

**B.     Venue is Proper in the Southern District of New York Pursuant to 28 U.S.C. § 1391(f)(1).**

25.     Venue is proper in this district under 28 U.S.C. § 1391(f)(1), because a substantial part of the events giving rise to the causes of action asserted in this Complaint occurred here. These events include, among others, the shipping of certain items of the Hicham U.S. Property at various times from Geneva to New York and then back to Geneva; Hicham's exercise of control over the disposition of the Hicham U.S. Property from New York prior to seizure; and the periodic offer of sale of certain items of the Hicham U.S. Property to collectors and other entities in New York.

---

Administrator and the Geneva Prosecutor, on the other. Specifically, articles 17, 19, 20 and 21 of the LTBC expressly require the Geneva Prosecutor and the Swiss Customs Administration to act at the direction of the Federal Office of Culture. *See* LTBC, art. 17 ("When [a body of the Federal Office of Culture] has reasonable suspicion that criminal activity is present under this Act, the specialized body will file a complaint with the competent prosecution authorities."); *id.* art. 19 (requiring the Swiss Customs Administration to inspect antiquities upon entry to the country); *id.* art. 20 § 1 (requiring "competent criminal prosecution authorities" to order the seizure of cultural property referred by the Federal Office of Culture); *id.* art. 21 ("The competent authorities from the . . . Cantons . . . provide all the data required for the execution of this Act to each other as well as the appropriate oversight authorities.").

## INTERNATIONAL LAW BACKGROUND

26.     The United States is a signatory ("State Party") to the UNESCO Convention. The United States implemented the UNESCO Convention by enacting the Convention on Cultural Property Implementation Act ("CPIA"), which became effective on April 12, 1983. Switzerland—and, by extension, Defendants as instrumentalities of the government of Switzerland or a territorial division in Switzerland, respectively—became a State Party under the UNESCO Convention in 1975 and implemented it by enacting the LTBC, which became effective on June 20, 2003. Defendants purport to have seized the Hicham U.S. Property with a view to repatriating it to certain additional State Parties or other third parties, which have not yet even been identified and which have not asserted any claim to or ownership interest in the Hicham U.S. Property.[11] Hence, Defendants' conduct is a clear violation of the UNESCO Convention and the rights of Hicham, who is the true, lawful and exclusive owner of the Hicham U.S. Property.

27.     The UNESCO Convention provides that a State Party requesting the return of cultural property imported after the entry into force of the UNESCO Convention shall pay just compensation to an innocent purchaser or to a person with valid title to the property.[12]  The countries to which the Defendants presumably would seek to repatriate the Hicham U.S. Property—Greece, Italy and Egypt, among others—are each State Parties as

---

[11] *See infra* para. 39 and n.23.

[12] UNESCO Convention, Article 7(b)(ii). *See infra* n.13 and accompanying text regarding the requirement to pay just compensation under the bilateral agreements entered pursuant to the LTBC between Switzerland and each of Italy, Egypt and Greece.

well and similarly would be bound by the requirement to pay Hicham just compensation for the Hicham U.S. Property.[13]

28.     By seizing the Hicham U.S. Property, the Geneva Prosecutor necessarily invoked the Swiss Penal Code as a basis for the seizure. Despite requests by Hicham's counsel to provide them with legal support for the seizure, the Geneva Prosecutor failed to cite any provision under the Swiss Penal Code justifying the seizure. By its unauthorized action, the Geneva Prosecutor has violated both Swiss and international law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.     The Hicham U.S. Property

29.     Hicham and his brother inherited a large collection of ancient art from their father, who started the family business in 1968 in Beirut, Lebanon. Since taking over the business in 1998, Hicham and his brother have increased the inventory of their business, bought and sold thousands of objects on the international market, exhibited material openly

---

[13] Article 9 of the LTBC provides for "Repatriation Claims based on Agreements." Pursuant to the LBTC, Switzerland has entered into bilateral agreements with Italy (effective April 27, 2008); Egypt (effective February 20, 2011); and Greece (effective April 13, 2011). *See Bilateral Agreements to the LTBC*, Federal Office of Culture, *available at* https://www.bak.admin.ch/bak/en/home/cultural-heritage/transfer-of-cultural-property/bilateral-agreements.html (last visited September 7, 2018).

These agreements respectively provide, among other things, for restitution of antiquities illegally excavated from Italy, Egypt and Greece. These are three countries, among others, to which Switzerland would presumably return the Hicham U.S. Property. Article 9 imposes substantial hurdles on a country demanding restitution. Among other things, the claimant must show that the cultural property is of "significant importance to its cultural heritage" and was imported illicitly; the claimant must carry the costs of repatriation; claims are subject to a one-year statute of limitations after the claimant gains knowledge of where and with whom the property is located, subject to a maximum of 30 years after illegal export; and good-faith purchasers required to return property have a claim for compensation at the time of repatriation, with the owner retaining the property until payment. Each of the bilateral agreements generally reflects these hurdles (*see* Italian agreement Article IV(3) and V(2); Egyptian agreement Article 4(5) and 6; Greek agreement Article IV(2) and V(2)). Each of the bilateral agreements also provides that the claimant must demonstrate that the object was illicitly imported into Switzerland after the effective date of such agreement (*see* Italian agreement Article IV(1)(b); Egyptian agreement Article 4(4); Greek agreement Article IV(1)(b)).

at their galleries both in New York and Geneva, exhibited material openly in numerous art fairs in Europe and America, published dozens of catalogues of their inventory, and maintain a web-site with an extensive on-line catalogue of their inventory and the history of exhibition and publication of each piece.

30.     Phoenix, Electrum and Hicham have been distinguished by their scholarship and the exceptional quality of their material, the care they take to establish the "provenance" and "provenience" of the material they offer for sale and the transparency with which they publish and exhibit such material.[14] Phoenix and Electrum generally acquire material from private art dealers in New York or Europe, auction houses or private collectors. Because of the intense public scrutiny under which leading international antiquities dealers operate, Phoenix and Electrum take great care to be *bona fide* purchasers with no notice of adverse claims by any third party, including any country of origin. Phoenix and Electrum purchase each object in reliance on express or implied warranties, representations or assurances from the sellers and the absence of any thefts reported to publicly-available databases of stolen art, such as the Art Loss Register. In purchases from dealers or collectors in the United States, they rely on statutory warranties of title and

---

[14] In the art world, the term "provenance" is commonly understood to mean an art work's history of ownership or chain of title. *See* Provenance, Oxford English Dictionary (3d ed. 2007) ("The history of the ownership of a work of art or an antique, used as a guide to authenticity or quality; a documented record of this."). The term "provenience" is commonly understood to mean an object's country of origin or archeological place of discovery or "find spot." *See* Provenience, Oxford English Dictionary (3d ed. 2007) ("Origin, derivation."). Like other art work, but unlike other asset classes such as real estate or securities, the ownership and transfer of antiquities historically never has been recorded in any title registries or transfer ledgers. Thus, as with other movable personal property, the determination of the provenience and provenance of antiquities is often uncertain, imprecise and unknowable. The LTBC acknowledges this reality. Article 16 of the LTBC imposes a duty of diligence on "persons active in the art trade and auctioning." Among other things, Section (c) of the second sentence of Article 16 requires such persons to "maintain written records on the acquisition of cultural property by specifically recording the origin of the cultural property, *to the extent known* . . . ." (emphasis added). Upon information and belief, Hicham has satisfied all elements of the duty of diligence under Article 16 of the LTBC with respect to the Hicham U.S. Property. *See infra* n.19 and accompanying text.

authenticity under the Uniform Commercial Code; in purchases at public auction, they rely on warranties of title and "authorship" from the auction house. Phoenix and Electrum are careful to avoid material that is likely to have been freshly looted, illegally excavated or stolen. Their pre-purchase "due-diligence" on potential acquisitions focuses on identifying any "red flags" that might call into question the legality of the material.

31.    The Hicham U.S. Property includes Hicham's personal collection of antiquities that he inherited from his father and has owned for decades as well as objects he has acquired as described in Paragraph 30 above.

**B.    The Unlawful Seizure of the Hicham U.S. Property**

32.    On January 17, 2017, the Swiss Office of Culture presented the Swiss Customs Administration with a complaint identifying certain antiquities whose provenance or provenience is allegedly in question. Certain parties had been under investigation by the Geneva Prosecutor in connection with the purchase, possession and concealment of archaeological objects suspected of having been acquired, transported and possessed contrary to Swiss law. The objects were stored in Geneva in a warehouse and other locations.

33.    On February 24, 2017, the Geneva Prosecutor issued an "Ordonnance de Perquisition et de Séquestre"—a search and seizure order—as to these objects.[15] The Ordonnance refers to a complaint—the "dénonciation de l'Office fédéral de la Culture"— by the Swiss Office of Culture to the Swiss Customs Administration on January 17, 2017. Four days later, on February 28, 2017, the Swiss Customs Administration issued a "Mandat

---

[15] Geneva Prosecutor Search and Seizure Order, dated February 24, 2017, annexed hereto as "Exhibit A."

de perquisition," its own search warrant, and seized additional objects from the Geneva warehouse.[16] The Hicham U.S. Property is among the objects that were seized pursuant to this Swiss law enforcement action.

34.     The Swiss Customs Administration's seizure order fails to identify any of the antiquities under suspicion as constituting any part of the Hicham U.S. Property. Notwithstanding the complete absence of any specific information linking the Hicham U.S. Property to any Swiss customs violation or other offense, the Geneva Prosecutor's search warrant unequivocally states that the seizure is being executed for the purpose of restitution, confiscation, satisfaction of any claims and use as evidence.[17] Shockingly, Defendants propose to expropriate the Hicham U.S. Property and deliver it to one or more yet-to-be-determined foreign countries, even without any present challenge by any potential claimant to the provenance of any of the objects included in the Hicham U.S. Property or any determination as to the provenience of the objects.[18] In other words, Defendants are bartering the Hicham U.S. Property for their own political gain.

35.     By letter dated May 7, 2018 to the Geneva Prosecutor, counsel for Hicham demanded the immediate release of the Hicham U.S. Property (the "May 7th Letter").[19] In

---

[16] Swiss Customs Administration Search Warrant, executed February 28, 2017, annexed hereto as "Exhibit B."

[17] *See* Exhibit A.

[18] *See infra* para. 39 and n.23.

[19] Letter, dated May 7, 2018, from Pearlstein McCullough & Lederman LLP to Claudio Mascotto, Procureur, Pouvoir judiciare, Ministère public, annexed hereto as "Exhibit C." The first sentence of LTBC Article 16 provides that "persons active in the art trade and auctioning" can transfer cultural property only when the transferor "may assume under the circumstances, that the cultural property was not stolen, illegally excavated or illicitly imported." Upon information and belief, Hicham never had any "red flags" of illegality with respect to the Hicham U.S. Property and has at all times satisfied the requirements of LTBC Article 16 with respect to the Hicham U.S. Property.

support of Hicham's position that the seizure was illegal, counsel explained that the Hicham U.S. Property had been either inherited decades ago or acquired from private art dealers in New York and Europe, auction houses or private collectors. As to those objects acquired from third parties, Hicham was a *bona fide* purchaser for value with no notice of any adverse claims by any third party, including those of any country of origin. He relied on express or implied warranties, representations or assurances from dealers and auction houses on the absence of any thefts reported to publicly available databases of stolen art, such as the Art Loss Register. In purchases from dealers in New York, Hicham also relied on statutory warranties of title and merchantability under the Uniform Commercial Code. In purchases at public auction, he relied on warranties of title and "authorship" from the auction house.[20]

36.     By letter dated May 11, 2018, the Geneva Prosecutor responded to counsel's May 7th Letter (the "May 11th Letter").[21]  Without presenting any supporting evidence or citing any applicable provision under the Swiss Penal Code, the Geneva Prosecutor stated that the Hicham U.S. Property is suspected of being in violation of the LTBC. The Geneva Prosecutor further stated that he seeks the production of documents and the opportunity to depose Hicham in Geneva. The Geneva Prosecutor did not provide any basis under either Swiss or international law, however, to depose a United States citizen in the absence of any formal legal proceedings pending before any court or tribunal.

---

[20] Counsel for Hicham sent a similar letter, also dated May 7, 2018, to the Geneva Prosecutor on behalf of the Beierwaltes, the plaintiffs in the parallel Colorado action, to whom Hicham's counsel is acting as co-counsel. See *supra* n.3.

[21] Letter, dated May 11, 2018, from Claudio Mascotto, Procureur, Pouvoir judiciare, Ministère public, to Pearlstein McCullough & Lederman LLP, annexed hereto as "Exhibit D."

37.     Hicham's counsel and the Geneva Prosecutor continued to exchange further correspondence, in which Hicham's counsel demanded the immediate and unconditional release of the seized property, and the Geneva Prosecutor reiterated his demand for the production of documents and his position that the disposition of the Hicham U.S. Property is subject exclusively to Swiss criminal procedure law.

38.     By separate letters dated July 5, 2018, Hicham's counsel sent a final demand for the release of antiquities to the Swiss Customs Administration, the President of the Council of State of the Canton of Geneva, the Swiss Federal Department of Finance and the Geneva Prosecutor (collectively, the "July 5th Letter").[22]

39.     By letter dated July 20, 2018, the Director of the Swiss Customs Administration responded to Hicham's counsel's July 5th Letter, stating that this matter rests solely within the jurisdiction of the Geneva Prosecutor in consultation with the Federal Office of Culture and that the essential inquiry is whether any of the seized objects should be returned to their respective countries of origin.[23]

40.     By letter dated August 2, 2018, the President of the Council of State of the Canton of Geneva responded to Hicham's counsel's July 5th Letter, declining to intervene in this matter and referring Hicham's counsel instead to the Geneva Prosecutor.[24]

---

[22] Letters, dated July 5, 2018, from Pearlstein McCullough & Lederman LLP to Dr. Christian Bock, Directeur, Swiss Customs Administration; Mr. Pierre Maudet, Président du Conseil d'État, Canton of Geneva; Mr. Ueli Maurer, Conseiller Fédéral, Département Fédéral des Finances; and Mr. Olivier Jornot, Procureur general, Pouvoir judiciare, Ministère public, annexed hereto collectively as "Exhibit E."

[23] Letter, dated July 20, 2018, from Mr. Christian Bock, Directeur, Swiss Customs Administration, annexed hereto as "Exhibit F."

[24] Letter, dated August 2, 2018, from Mr. Pierre Maudet, Président du Conseil d'État, Canton of Geneva, annexed hereto as "Exhibit G."

41.     By letter dated August 2, 2018, the Geneva Prosecutor responded to Hicham's counsel's July 5th Letter, reiterating his position that this matter falls exclusively within the purview of Swiss criminal law and his intent to challenge the jurisdiction of the courts of the United States to adjudicate any civil action for relief.[25]

42.     On August 8, 2018 the Geneva Prosecutor partially lifted its search and seizure order relating to a certain number of objects that it had seized on or about February 24, 2017. Certain of the objects released are among the Hicham U.S. Property, though the vast majority of the Hicham U.S. Property has not been released and remains in the exclusive custody and under the control of the Defendants.[26]

## COUNT I

### Declaratory Judgment as to Title

43.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs "1" through "42" of this Complaint with the same force and effect as if herein set forth in full.

---

[25] Letter, dated August 2, 2018, from Claudio Mascotto, Procurer, Pouvoir judiciare, Ministère public, annexed hereto at "Exhibit H." Note that Exhibit H references the Beierwaltes, to whom Hicham's counsel acts as co-counsel in the parallel Colorado action. *Supra* n.3. Exhibit H was sent in response to Exhibit E, Hicham's counsel's letter dated July 5, 2018 in which Hicham's counsel's dual representation is set forth. The substance of Exhibit H is interpreted as applicable both to Hicham and the Beierwaltes, notwithstanding that only the latter name is captioned in Exhibit H.

[26] Incredibly, of the thousands of antiquities that had been seized pursuant to the Geneva Prosecutor Search and Seizure Order, *see* Exhibit A, 23 either were stolen or disappeared under mysterious circumstances in May 2018 while in the exclusive custody and under the control of the Geneva Prosecutor. *See* https://www.letemps.ch/suisse/geneve-antiquites-sequestrees-justice-ont-volees (last visited September 7, 2018). Two of those 23 antiquities—a mosaic depicting Christ and another depicting the Virgin Mary—are part of the Hicham U.S. Property that Hicham inherited from his father. They are magnificent objects whose fair market value upon information and belief is approximately USD $2 million. The Geneva Prosecutor has commenced a separate investigation into the disappearance of all 23 objects yet has failed to acknowledge any liability for the loss. *See id.* Hicham is contemplating a separate action in Switzerland against the Geneva Prosecutor for its gross negligence in failing to safeguard his property.

44.     The Hicham U.S. Property includes Hicham's personal collection of antiquities that he inherited from his father and has owned for decades as well as material acquired from private art dealers in New York or Europe, auction houses or private collectors.

45.     Upon information and belief, as to those antiquities that Hicham acquired from private art dealers in New York or Europe, auction houses or private collectors, he is a *bona fide* purchaser for value with no notice of any adverse claims by any third party, including those of any State Party or other country of origin.

46.     As to those antiquities that Hicham acquired from private art dealers in New York or Europe and auction houses, he relied on express or implied warranties, representations or assurances and in reliance on the absence of any thefts reported to publicly available databases of stolen art, such as the Art Loss Register.

47.     As to those antiquities that Hicham acquired from private art dealers or collectors in transactions subject to the applicable state laws in the United States, Hicham also relied on statutory warranties of title and merchantability under the UCC.

48.     As to those antiquities that Hicham acquired from auction houses, Hicham relied on warranties of title and "authorship" from the auction house.

49.     No individual, foreign sovereign, State Party or any other third party has asserted any claim to, ownership interest in or rights to the Hicham U.S. Property pursuant to UNESCO or otherwise, based on a violation of its own or any other law.

50.     Switzerland has no claim to, ownership interest in or rights to the Hicham U.S. Property pursuant to UNESCO or the LTBC.

51.     No individual, foreign sovereign, State Party or any other third party has presented any evidence disputing the provenance of the Hicham U.S. Property.

52.     Defendants have failed to offer any factual or legal support justifying the seizure, retention and prospective repatriation to source countries of the Hicham U.S. Property.

53.     Hicham is the true, lawful and exclusive owner of the Hicham U.S. Property.

54.     To the extent that any party, including the Swiss Office of Culture, the Swiss Customs Administration and the Canton of Geneva claims any interest in the Hicham U.S. Property, such claim is without foundation or right and is void as a matter of law.

55.     Hicham requests that this Court enter an Order declaring Hicham to be the true, lawful and exclusive owner of the Hicham U.S. Property and requiring the Defendants to relinquish possession of the Hicham U.S. Property, immediately release the Hicham U.S. Property to Hicham and permit the unrestricted marketing, sale, import and export of the Hicham U.S. Property.

## **COUNT II**

### **Conversion**

56.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs "1" through "55" of this Complaint with the same force and effect as if herein set forth in full.

57.     Hicham in part inherited the Hicham U.S. Property from his father and has owned it for decades and in part acquired it from private art dealers in New York or Europe, auction houses or private collectors.

58.     Hicham is the true, lawful and exclusive owner of the Hicham U.S. Property.

59.     No individual, foreign sovereign, State Party or any other third party has asserted any claim to, ownership interest in or rights to the Hicham U.S. Property.

60.     Switzerland has no claim to, ownership interest in or rights to the Hicham U.S. Property.

61.     By seizing the Hicham U.S. Property, Defendants have exercised dominion and control over the Hicham U.S. Property for their own use and political purpose, namely the prospective repatriation of the Hicham U.S. Property to as yet undetermined and unidentified State Parties or other source countries at Defendants' sole discretion.

62.     Defendants' actions constitute a *de facto* forfeiture of the Hicham U.S. Property without due process and in violation of international law.

63.     Defendants' exercise of dominion and control over the Hicham U.S. Property was unauthorized.

64.     Hicham, through his counsel, has demanded the release of the Hicham U.S. Property.

65.     Defendants have refused to release the Hicham U.S. Property.

66.     Hicham is entitled to damages representing the full amount of the aggregate fair market value of the Hicham U.S. Property.

67.     Consequently, Hicham has been damaged in the amount of USD $90 million, together with statutory interest.

## COUNT III

### Unjust Enrichment

68.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs "1" through "67" of this Complaint with the same force and effect as if herein set forth in full.

69.     Hicham is the true, lawful and exclusive owner of the Hicham U.S. Property.

70.     No individual, foreign sovereign, State Party or any other third party has asserted any claim to, ownership interest in or rights to the Hicham U.S. Property.

71.     Switzerland has no claim to, ownership interest in or rights to the Hicham U.S. Property.

72.     By seizing the Hicham U.S. Property, Defendants have received a benefit, namely the expropriation of the Hicham U.S. Property for their own use and political, diplomatic or other purpose. By their intended repatriation of the Hicham U.S. Property to State Parties, other source countries or other third parties, Defendants are bartering the Hicham U.S. Property for their own political or diplomatic gain.

73.     By expropriating the Hicham U.S. Property for their own use and political, diplomatic or other purpose, Defendants have been unjustly enriched at Hicham's expense by continuing to possess property to which they have no claim, interest or right.

74.     Defendants' actions constitute a *de facto* forfeiture of the Hicham U.S. Property without due process and in violation of international law.

75.     Equity and good conscience demand that Defendants pay damages to Hicham, because Defendants' unlawful seizure and prospective repatriation of the Hicham

U.S. Property make it unjust for Defendants to retain the benefit of their actions without just and commensurate compensation to Hicham.

76.     Hicham is entitled to damages representing the full amount of the aggregate fair-market value of the Hicham U.S. Property.

77.     Consequently, Hicham has been damaged in the amount of USD $90 million, together with statutory interest.


## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff as follows:

(A)     On Count I of the Complaint, a declaratory judgment that Hicham is the true, lawful and exclusive owner of the Hicham U.S. Property and that Defendants relinquish possession of the Hicham U.S. Property, immediately release the Hicham U.S. Property to Hicham and permit the unrestricted marketing, sale, import and export of the Hicham U.S. Property;

(B)     On Count II of the Complaint, damages to be determined at trial, but in no case less than USD $90 million;

(C)     On Count III of the Complaint, damages to be determined at trial, but in no case less than USD $90 million;

(D)     Interest, costs and disbursements, including reasonable attorneys' fees and disbursements incurred in this action; and

(E)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 10, 2018

Respectfully submitted,

Pearlstein McCullough & Lederman LLP
*Attorneys for Plaintiff*


By: /s/ *Georges G. Lederman*

Georges G. Lederman
William G. Pearlstein
641 Lexington Avenue, Suite 1327
New York, NY 10022
Telephone: (646) 762-2833
Facsimile: (212) 634-6311
Email: glederman@pmcounsel.com
wpearlstein@pmcounsel.com