**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Hicham Aboutaam, <br><br> *Plaintiff,* <br><br> v. <br><br> L'Office Fédéral de la Culture de la Confédération Suisse, L'Administration Fédérale Des Douanes de la Confédération Suisse, La République et Canton de Genève, <br><br> *Defendants.* | Case No. 18-cv-8248 <br> The Honorable Ronnie Abrams |
| Lynda Beierwaltes, William Beierwaltes, <br><br> *Plaintiffs,* <br><br> v. <br><br> L'Office Fédéral de la Culture de la Confédération Suisse, L'Administration Fédérale Des Douanes de la Confédération Suisse, La République et Canton de Genève, <br><br> *Defendants.* | Related Case No. 18-cv-11167 <br> The Honorable Ronnie Abrams |

**THE REPUBLIC AND CANTON OF GENEVA'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Robert Reeves Anderson (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
(303) 863-1000
Reeves.Anderson@arnoldporter.com

Marcus A. Asner
Mathieu Coquelet Ruiz (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th Street
New York, NY 10019-9710
(212) 836-7222
Marcus.Asner@arnoldporter.com
Mathieu.Ruiz@arnoldporter.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

I.    Geneva Is Immune from Suit ................................................................................... 2

      A.    Plaintiffs do not allege a taking in violation of international law .......................... 2

      B.    Plaintiffs do not allege the relevant U.S. nexus against Geneva ........................... 4

II.   The Act of State Doctrine Applies ............................................................................ 8

III.  Comity Warrants Dismissal In Favor of Swiss Proceedings ........................................ 9

IV.   Jurisdictional Discovery Is Unwarranted .................................................................. 10

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Air Line Pilots Ass'n, Int'l v. O'Neill,*
499 U.S. 65 (1991)................................................................................3

*Arch Trading Corp. v. Republic of Ecuador,*
839 F.3d 193 (2d Cir. 2016)................................................................6

*Banco Nacional de Cuba v. First Nat'l City Bank of N.Y.,*
431 F.2d 394 (2d Cir. 1970)................................................................8

*Cassirer v. Kingdom of Spain,*
616 F.3d 1019 (9th Cir. 2010) ............................................................6

*Chettri v. Nepal Rastra Bank,*
834 F.3d 50 (2d Cir. 2016)................................................................2

*Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.,*
686 F.2d 322 (5th Cir. 1982) ............................................................8

*de Csepel v. Republic of Hungary,*
859 F.3d 1094 (D.C. Cir. 2017) ......................................................4, 6

*Empresa Cubana Exportadora, Inc. v. Lamborn & Co.,*
652 F.2d 231 (2d Cir. 1981)............................................................8, 9

*First Nat'l City Bank v. Banco Nacional de Cuba,*
406 U.S. 759 (1972)............................................................................8

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,*
462 U.S. 611 (1983)............................................................................7

*Fischer v. Magyar Allamvasutak Zrt.,*
777 F.3d 847 (7th Cir. 2015) ............................................................9

*Foremost-McKesson, Inc. v. Islamic Republic of Iran,*
905 F.2d 438 (D.C. Cir. 1990)..........................................................10

*Freund v. Republic of France,*
592 F. Supp. 2d 540 (S.D.N.Y. 2008)................................................9

*Garb v. Republic of Poland,*
440 F.3d 579 (2d Cir. 2006)............................................................4, 5

*Glen v. Club Medeterranee S.A.,*
    365 F. Supp. 2d 1263 (S.D. Fla. 2005) ....................................................................8

*Hilsenrath v. Swiss Confederation,*
    No. 07-cv-2782, 2007 WL 3119833 (N.D. Cal. Oct. 23, 2007) ...........................2, 8

*Kuo v. Gov't of Taiwan,*
    No. 17-CV-10156 (JPO), 2019 WL 120725 (S.D.N.Y. Jan. 7, 2019) ........................4

*McKesson Corp. v. Islamic Republic of Iran,*
    672 F.3d 1066 (D.C. Cir. 2012) .............................................................................7

*MMA Consultants 1, Inc. v. Republic of Peru,*
    719 F. App'x 47 (2d Cir. 2017) .............................................................................2

*Mujica v. AirScan, Inc.,*
    771 F.3d 580 (9th Cir. 2014) ................................................................................9

*Orkin v. Swiss Confederation,*
    No. 09-cv-10013, 2011 WL 167840 (S.D.N.Y. Jan. 13, 2011) ................................6

*Oui Financing LLC v. Dellar,*
    No. 12-cv-7744, 2013 WL 5568732 (S.D.N.Y. Oct. 9, 2013)...................................9

*Rong v. Liaoning Provincial Gov't,*
    362 F. Supp. 2d 83 (D.D.C. 2005) ........................................................................8

*Rukoro v. Fed. Republic of Germany,*
    363 F. Supp. 3d 436 (S.D.N.Y. 2019).................................................................4, 7

*Samincorp USA, Inc. v. Republic of Guyana,*
    No. 87-cv-4969, 1989 WL 53011 (S.D.N.Y. May 15, 1989) ...................................5

*Smith Rocke Ltd. v. Republica Bolivariana de Venezuela,*
    No. 12-cv-7316, 2014 WL 288705 (S.D.N.Y. Jan. 27, 2014) ..................................9

*Ungaro-Benages v. Dresdner Bank AG,*
    379 F.3d 1227 (11th Cir. 2004) ............................................................................9

*Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi,*
    215 F.3d 247 (2d Cir. 2000)............................................................................2–3, 7

## Statutes

22 U.S.C. § 2370(e)(2)...........................................................................................8

28 U.S.C. § 1605(a)(3)........................................................................................5, 9

28 U.S.C. § 1606...................................................................................................9

**Other Authorities**

Brief for the United States as Amicus Curiae, *de Csepel v. Republic of Hungary*,
    139 S. Ct. 784 (2019) (No. 17-1165), 2018 WL 6382956......................................................4

Federal Judicial Center, *The Foreign Sovereign Immunities Act: A Guide for
    Judges* (2d ed. 2018)................................................................................................................4

Restatement (Fourth) of Foreign Relations Law (2018)........................................................4, 7, 9

Restatement (Third) of Foreign Relations Law (1987)........................................................3, 8–9

**INTRODUCTION**

Plaintiffs' opposition brief (18-cv-8248 ECF 45, "Opp.") shows that the legal process in Switzerland is working properly.[1] Plaintiffs concede that the Swiss authorities "[f]ollow[ed] the protocol prescribed by the [UNESCO] Convention and Switzerland's federal law adopting that convention" in authorizing the contested seizure. Opp. 3–4. Notwithstanding Plaintiffs' decision to stonewall Swiss authorities' inquiries into the provenance and ownership of the antiquities, thereby prolonging the Swiss investigation, Plaintiffs admit that Swiss authorities have returned at least 5,000 of the 12,000 artifacts after determining their lawful ownership. Opp. 13; *see also id.* Ex. 20. That total includes the figurine made by Aboutaam's niece, which was returned in a matter of days. Opp. Ex. 18. These developments and admissions demonstrate that this Court should refrain from interfering in Geneva's ongoing criminal investigation.

While facts are still being untangled in Switzerland, the law in this jurisdiction is clear. This case presents no "question of first impression." Opp. 1. On the contrary, the dispositive questions of law are well-settled and plainly require dismissal. Plaintiffs disregard binding circuit precedent to advance a sweeping and novel interpretation of the FSIA that would transform every foreign criminal investigation involving personal property into an actionable expropriation lawsuit in the United States. But that is not all. Plaintiffs' sprawling theory of imputed U.S. contacts would eliminate immunity for *every* governmental agency and political subdivision of Switzerland, including those that have nothing whatsoever to do with this case. Not surprisingly, Plaintiffs cite no authority for these propositions, which are foreclosed by the FSIA's text and controlling precedent. For these and other reasons, the Court should dismiss this action.

---

[1] The Beierwaltes Plaintiffs incorporated the Aboutaam opposition brief by reference (18-cv-11167, ECF 46).

1

## I.     Geneva Is Immune from Suit

Plaintiffs concede that "Geneva is a political subdivision of Switzerland" presumptively immune from suit. Opp. 21; *id.* 5–6. Thus, to vest jurisdiction, Plaintiffs must "establish by a preponderance of the evidence that [the expropriation] exception under the FSIA permits jurisdiction over the foreign sovereign." *MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 51 (2d Cir. 2017). Plaintiffs fail at every step of the analysis.

### A.     Plaintiffs do not allege a taking in violation of international law

The Second Circuit's opinion in *Chettri v. Nepal Rastra Bank* is dispositive on two elements of the expropriation exception: (1) there was no "taking" of property (MTD 12–14), and (2) there was no taking of property "in violation of international law" (MTD 14–17). In *Chettri*, the Second Circuit held that the "freezing" of "assets in connection with an ongoing money laundering investigation" does not allege "a taking, much less a taking 'in violation of international law.'" 834 F.3d 50, 58 (2d Cir. 2016). Plaintiffs try to distinguish *Chettri* on the basis that the foreign bank noted "irregularities" that precipitated the freeze order. Opp. 12. But the Swiss authorities likewise documented "irregularities"—including the discovery of fraudulently imported objects and the suspicious movement of merchandise. MTD 5–7 & n.9.

In addition, the Second Circuit in *Chettri* nowhere suggested that its holding was based on "evidence of irregularities," Opp. 12. Rather, the court rejected plaintiffs' argument that "a routine law enforcement action such as this constitutes a taking within the meaning of [the FSIA]." 834 F.3d at 58. Plaintiffs simply ignore the legal analysis in *Chettri*, *Hilsenrath*, and other FSIA cases holding that asset seizure in the course of a foreign criminal investigation does not constitute an expropriation, even if the assets remain frozen for years. MTD 14–16.[2]

---

[2]  Although the FSIA does not define "taking," (Opp. 8), the Second Circuit has held that "the phrase 'taken in violation of international law' refers to 'the nationalization or expropriation of property….'" *Zappia Middle E.*

In contrast to the one sentence Plaintiffs devote to the controlling *Chettri* decision, Plaintiffs rely heavily on section 712 of the Restatement (Third) of Foreign Relations Law (1987) for the proposition that any "arbitrary" action can constitute expropriation. Opp. 8, 11. But Section 712 refutes that position, explaining that "arbitrary" deprivations "fall[] short of an act that would constitute an expropriation." Restatement (Third) § 712 rpt. n.11. The word "arbitrary" does not appear in the expropriation exception, and Plaintiffs offer no settled meaning for that term in international law. Section 712 further notes that a foreign government "is not responsible for loss of property or for other economic disadvantage resulting from bona fide general taxation, regulation, forfeiture for crime, or other action of the kind that is commonly accepted as within the police power of states." *Id.* cmt. g. That is precisely the case here.

But even if arbitrary seizures could constitute a "taking in violation of international law," nothing about Geneva's actions was arbitrary. *Cf. Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (an act is "arbitrary only if, in light of the factual and legal landscape at the time … [the] behavior is so far outside a wide range of reasonableness as to be irrational"). Plaintiffs concede that the Swiss authorities "[f]ollow[ed] the protocol prescribed by the [UNESCO] Convention and Switzerland's federal law adopting that convention." Opp. 3–4. While Plaintiffs contend that Swiss authorities lacked "articulable suspicion" to justify seizure (Opp. 9), the documents attached to Plaintiffs' complaint definitively prove otherwise. *See* MTD 5–9. Plaintiffs' remaining procedural objections rest on the false premise that Switzerland has "repatriated" the antiquities to another country. Opp. 9–13. But Plaintiffs never allege repatriation, which involves a civil process distinct from criminal seizure and forfeiture.

---

*Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000). Plaintiffs do not dispute that Geneva has neither nationalized nor expropriated the property; Geneva asserts no ownership right to the disputed antiquities. Without a "taking," Plaintiffs have no right to "just compensation." Opp. 11.

Any procedural objections to "prospective repatriation" (AC ¶ 52) should be raised in Switzerland at the appropriate time. *See, e.g.*, Opp. Ex. 15 (detailing legal proceedings to contest repatriation). At most, Plaintiffs complain not of a "violation of international law," as the expropriation exception requires, but of perceived noncompliance with Swiss procedure. That belief, even if Plaintiffs could substantiate it, does not strip Geneva of its immunity.

### B.    Plaintiffs do not allege the relevant U.S. nexus against Geneva

Controlling precedent also forecloses Plaintiffs' attempt to establish the expropriation exception's "nexus" requirement as to Geneva. MTD 17–20. As the Second Circuit explained in *Garb v. Republic of Poland*, a suit against a foreign state or its political subdivision can only be sustained under the first "heightened" nexus prong, which requires "that property … is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 440 F.3d 579, 588 (2d Cir. 2006). The D.C. Circuit reached the same conclusion in *de Csepel v. Republic of Hungary*, holding that "a foreign state retains its immunity unless the first clause of the commercial-activity nexus requirement is met." 859 F.3d 1094, 1107 (D.C. Cir. 2017). The U.S. Government, the Restatement (Fourth) of Foreign Relations Law (2018), and this Court have all agreed.[3] Remarkably, while Plaintiffs cite *Garb* and *de Csepel* for other points (Opp. 14–15, 19, 23), Plaintiffs ignore those courts' analysis of the first nexus prong, which is plainly inapplicable since the property at issue here remains in Switzerland.

---

[3]  Br. for the United States as Amicus Curiae, *de Csepel v. Republic of Hungary*, 139 S. Ct. 784 (2019) (No. 17-1165), 2018 WL 6382956 at *11 ("Th[e] text and structure as a whole is most naturally read as establishing two distinct tracks for obtaining jurisdiction…. The statutory context, history, and purpose powerfully support that interpretation."); Restatement (Fourth) of Foreign Relations Law § 455 rpt. n.9 ("That interpretation would accord more closely with respect for agencies and instrumentalities as separate entities."); *Kuo v. Gov't of Taiwan*, No. 17-CV-10156 (JPO), 2019 WL 120725, at *2 n.1 (S.D.N.Y. Jan. 7, 2019) ("this Court holds that the immunity of foreign state defendants can be overcome only through the stricter nexus requirement in § 1605(a)(3)"); *Rukoro v. Fed. Republic of Germany*, 363 F. Supp. 3d 436, 451–52 (S.D.N.Y. 2019); Federal Judicial Center, *The Foreign Sovereign Immunities Act: A Guide for Judges* 69–70 (2d ed. 2018) ("If the suit is against the foreign state itself, the seized property in question (or property exchanged for such property) must be present in the United States….").

Instead, Plaintiffs rely on the second nexus prong, which requires that "property … is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3). Plaintiffs argue that the alleged acts of a separate defendant—the Swiss Federal Office of Culture (FOC), which Plaintiffs contend is an agency of the Swiss Confederation—are sufficient to predicate jurisdiction over *Geneva*. If the FOC is not immune, Plaintiffs argue that *all* other entities within the "foreign state" of Switzerland also lack immunity. Opp. 20–22.

This argument fails for multiple reasons. First, it is foreclosed by the Second Circuit's analysis in *Garb* and contrary to the text, context, and history of the FSIA. *Supra* p. 4 & n.3. Second, Plaintiffs concede that under the second prong, "*the defendant* must … be an agency or instrumentality." Opp. 13 (emphasis added). Immunity is defendant-specific, and Geneva is not an agency or instrumentality. Third, even if the second prong applied political subdivisions, the statutory text provides that a "foreign state" like Geneva "shall not be immune" if, among other conditions, "property is owned or operated by an agency or instrumentality *of the foreign state*." 28 U.S.C. § 1605(a)(3) (emphasis added). FOC is not an agency of Geneva. "Foreign state" cannot be interpreted to mean "Geneva" at the outset of the expropriation exception and then "Switzerland" later in the same sentence. Perhaps recognizing the linguistic pretzel they created, Plaintiffs argue that "Geneva also is Switzerland." Opp. 21. That is nonsense. Just like Pennsylvania is not the United States, and Ontario is not Canada, Geneva is not Switzerland. Geneva is a separate sovereign with its own immunity. *Samincorp USA, Inc. v. Republic of Guyana*, No. 87-cv-4969, 1989 WL 53011, at *6 n.6 (S.D.N.Y. May 15, 1989) ("it is incumbent on any court presented with a claim of immunity on behalf of multiple foreign sovereign defendants to make a separate determination with respect to each defendant").

5

Plaintiffs assert that "courts" have adopted their interpretation (Opp. 20), but the only case cited—*Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1032 (9th Cir. 2010) (en banc)—did not so hold. Rather, the Ninth Circuit held that if one sovereign (Nazi Germany) expropriated property in violation of international law, then another sovereign (Spain) could be sued under the expropriation exception if Spain later acquired the property. The Ninth Circuit did not address, let alone adopt, Plaintiffs' sprawling nexus theory that subjects foreign sovereigns to jurisdiction under prong two. *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016) (noting that *Cassirer* provided no "independent analysis" of jurisdiction over Spain).[4]

Even if FOC's U.S. contacts could be used to predicate jurisdiction over its direct sovereign (Switzerland), it does not "necessarily follow" (Opp. 20) that an agency's nexus subjects a *separate* sovereign (like Geneva) to jurisdiction. Plaintiffs nevertheless argue that if one sovereign entity (here, FOC) loses its immunity, then *every other part of the foreign state* loses immunity, too (*e.g.*, the Department of Civil Protection and Sport), as does every agency or instrumentality of the foreign government (*e.g.*, the government-owned railways), as does every political subdivision and Canton in Switzerland. To analogize Plaintiffs' bootstrap argument, if Amtrak (owned by the U.S. Government) were subject to jurisdiction in a foreign country for taking a passenger's property, Plaintiffs believe that the State of New York (and California and Mississippi) also would be subject to suit, based on *Amtrak*'s commercial dealings. So, too, would the U.S. Department of Education, the City of Albany Water Board, and all U.S. federal courts. The FSIA, however, predicates immunity of sovereigns based on their *own* U.S. contacts, and a lack of immunity for one does not require lack of immunity for all.

---

[4] In contrast, courts have criticized Plaintiffs' textual argument, noting that it would mean that an agency that owns or operates the property could never be subject to suit because the defendant's *own* agent must hold the property. *de Csepel*, 859 F.3d at 1107. Such absurd results "would be contrary to common sense." *Orkin v. Swiss Confederation*, No. 09-cv-10013, 2011 WL 167840, at *2 n.4 (S.D.N.Y. Jan. 13, 2011).

Plaintiffs' position also ignores the Supreme Court's decision in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), which held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such," *Bancec*, 462 U.S. at 626–27; *see* Restatement (Fourth) of Foreign Relations Law § 452 ("Agencies and instrumentalities of a foreign state are presumptively distinct from the foreign state itself and from each other *for the purposes of immunity* and substantive liability." (emphasis added)). *Bancec*'s "strong" presumption of separateness, *Zappia*, 215 F.3d at 252, cannot be set aside just because the Swiss Confederation and its Cantons are "intertwined." Opp. 21. Like States in the United States, Cantons in the Swiss Confederation are separate sovereigns. MTD 3 & nn. 2–4.[5]

Plaintiffs' arguments, taken together, would stretch the FSIA's expropriation exception far beyond its limits. Plaintiffs could vitiate immunity simply by alleging a so-called "arbitrary" act by a foreign government, under local laws, that temporarily restricts the movement of private property, even if the act occurs in the course of a criminal investigation. And, as a result, *all* governmental agencies, entities, and subdivisions within that foreign country would be subject to lawsuit in the United States, even if those defendants had no contact with the United States. Plaintiffs' arguments turn the "narrowly drawn" FSIA exception on its head. *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012).

Having failed to establish the necessary elements of the expropriation exception, Plaintiffs' complaints must be dismissed for lack or jurisdiction.[6]

---

[5]  As an additional basis for dismissal, Geneva respectfully submits that FOC is not an agency or instrumentality of Switzerland for the reasons set forth in the Reply Memorandum of the co-defendants, 18-cv-8248, ECF 48, at 4–8.

[6]  Plaintiffs' failure to overcome Geneva's immunity also precludes personal jurisdiction. *Rukoro*, 363 F. Supp. 3d at 444; *cf.* Opp. 22.

## II.    The Act of State Doctrine Applies

Plaintiffs do not dispute that the act of state doctrine, if applicable, bars this suit. *Compare* MTD 20–23 (analyzing the doctrine's two-part test) *with* Opp. 22–23 (not disputing either point). Plaintiffs' only response is that Geneva supposedly "ignores a significant statutory limitation on the Act of State doctrine"—the "Second Hickenlooper Amendment," 22 U.S.C. § 2370(e)(2)—which "expressly provides that the Act of State doctrine does not apply to claims of takings in violation of international law." Opp. 22. That position is incorrect for two reasons.

First, as set forth above, the Swiss seizure order did not violate international law. Thus, the Amendment does not apply by its own terms, and the act of state doctrine constitutes an independent basis for dismissal. Second, the Second Circuit has "interpreted [the Amendment] as applying only to cases in which the expropriated property has found its way back in to the United States." *Empresa Cubana Exportadora, Inc. v. Lamborn & Co.*, 652 F.2d 231, 237 (2d Cir. 1981). In *Banco Nacional de Cuba v. First Nat'l City Bank of N.Y.*, 431 F.2d 394, 399–402 (2d Cir. 1970), the Second Circuit exhaustively reviewed the Amendment's text and history and held that the Amendment extends only to property proceeds located in the United States. When the U.S. Supreme Court subsequently reversed the Second Circuit's decision on other grounds in *First Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759 (1972), the justices expressly left the Second Circuit's "determination [on the Second Hickenlooper Amendment] undisturbed." *Id*. at 780 n.5 (1972) (Brennan, J., dissenting). Other courts have subsequently agreed with the Second Circuit's analysis.[7] Accordingly, "[s]ince in this case the seized assets are still in"

---

[7]  *See, e.g.*, *Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*, 686 F.2d 322, 327 (5th Cir. 1982); *Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 99–100 (D.D.C. 2005); *Hilsenrath v. Swiss Confederation*, No. 07-cv-2782, 2007 WL 3119833, at *6 (N.D. Cal. Oct. 23, 2007); *Glen v. Club Medeterranee S.A.*, 365 F. Supp. 2d 1263, 1268 (S.D. Fla. 2005); *see also* Restatement (Third) of Foreign Relations Law § 444 rpt. n.5 ("In an action arising out of an expropriation, brought against a foreign state under 28 U.S.C. § 1605(a)(3), … a plaintiff seeking to benefit from the Hickenlooper Amendment must demonstrate that the property in question is within the United

Switzerland, "the Hickenlooper Amendment does not apply." *Lamborn & Co.*, 652 F.2d at 237.[8]

## III.   Comity Warrants Dismissal In Favor of Swiss Proceedings

Dismissal also is warranted on grounds of international comity because the Swiss courts are the more appropriate forum to address Plaintiffs' challenge to the seizure of antiquities by Swiss authorities in Geneva. Each of Plaintiffs' objections falters under scrutiny.

Plaintiffs first argue that the FSIA "precludes" dismissal on comity or exhaustion, because under 28 U.S.C. § 1606, a foreign state "shall be liable in the same manner and to the same extent as a private individual," and, Plaintiffs argue, "[c]omity is not a defense available to a private individual." Opp. 23. That is incorrect. Courts routinely defer litigation for private parties based on comity and exhaustion of foreign proceedings. *E.g.*, *Mujica v. AirScan, Inc.*, 771 F.3d 580, 596– 615 (9th Cir. 2014); *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237–40 (11th Cir. 2004); *Oui Financing LLC v. Dellar*, No. 12-cv-7744, 2013 WL 5568732, at *6–13 (S.D.N.Y. Oct. 9, 2013). Likewise, courts apply international comity at the request of foreign sovereigns in FSIA cases. *E.g.*, *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 852 (7th Cir. 2015); *Freund v. Republic of France*, 592 F. Supp. 2d 540, 575–79 (S.D.N.Y. 2008).

Next, Plaintiffs argue that no "exceptional circumstances" justify deference to Swiss proceedings. Opp. 24. But foreign criminal proceedings indisputably constitute "exceptional circumstances." MTD 24. Plaintiffs also curiously deny the existence of "parallel Swiss proceedings," Opp. 24, but the ongoing criminal investigation in Switzerland, as well as other remedies available to Plaintiffs in Switzerland, indisputably constitute parallel proceedings.

---

States (or was there when the action was commenced)."); Restatement (Fourth) of Foreign Relations Law § 441 cmt. h, rpt. n.12.

[8]  Plaintiffs misplace reliance on *Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, No. 12-cv-7316, 2014 WL 288705 (S.D.N.Y. Jan. 27, 2014). *See* Opp. 22. The Court held that the plaintiffs had not demonstrated an exception to immunity under the FSIA and did not reach the act of state defense. 2014 WL 288705, at *9–10 & n.6.

Plaintiff Aboutaam apparently has contemplated relief in Switzerland but has not sought it. AC ¶ 42 n.26; *see also* Opp. Ex. 15 (detailing Ali Aboutaam's legal efforts in Switzerland to prevent repatriation of other antiquities, and his "satisfaction" with the resolution of those proceedings).

Finally, Plaintiffs argue that exhaustion in Switzerland would be "futile." Opp. 25. But Plaintiffs cannot be heard to complain about the "futility" of Swiss procedures when Plaintiffs' own records demonstrate that Plaintiffs stonewalled the Swiss authorities at every turn and have never sought judicial relief in Switzerland. *See* AC Ex. D; Ex. F; Ex. H. Futility is a high hurdle, and Plaintiffs do not seriously try to surmount it.

## IV.   Jurisdictional Discovery Is Unwarranted

The Court should deny Plaintiffs' unsubstantiated request for jurisdictional discovery. *See* Opp. 6. This lawsuit against Geneva fails as a matter of law, and Plaintiffs identify no discoverable facts that would alter the legal analysis above. Plaintiffs' fishing expedition also would undermine Geneva's immunity from "the attendant burdens of litigation," *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990). This Court should deny Plaintiffs' attempt to needlessly prolong this litigation.

*          *          *

Whether for lack of jurisdiction or based on various abstention doctrines, U.S. courts do not sit in collateral review of ongoing criminal proceedings in a foreign country. No amount of invective or protest by Plaintiffs can change that fact or the jurisprudence that underlies it. The Canton of Geneva respects the authority of U.S. courts and prosecutors to handle matters within their jurisdiction without foreign interference. Reciprocally, the Canton of Geneva respectfully asks this Court to decline Plaintiffs' invitation to usurp and invalidate an ongoing criminal investigation in Switzerland by Swiss authorities that is governed by Swiss law and relates to property located exclusively in Switzerland. These cases should be dismissed.

**CONCLUSION**

Geneva respectfully requests that this Court dismiss these related actions.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ Marcus A. Asner
Marcus A. Asner
Mathieu Coquelet Ruiz, *pro hac vice*
250 W. 55th Street
New York, NY  10019-9710
(212) 836-7222
Marcus.Asner@arnoldporter.com
Mathieu.Ruiz@arnoldporter.com

R. Reeves Anderson, *pro hac vice*
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
(303) 863-1000
Reeves.Anderson@arnoldporter.com