**Kevin N. Ainsworth**
212 692 6745
kainsworth@mintz.com

Chrysler Center
666 Third Avenue
New York, NY 10017
212 935 3000
mintz.com



May 7, 2019

**VIA ECF**

Honorable Ronnie Abrams, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Aboutaam v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-8248-RA; and *Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-11167-RA

Dear Judge Abrams:

We represent the Plaintiff, Hicham Aboutaam.[1]  On December 14, 2018, your Honor ordered that "[i]f Plaintiffs require jurisdictional discovery, they may submit a letter to the Court." (ECF No. 27 at 3.)  Discovery is necessary because Defendants' reply briefs on their motions to dismiss have raised issues requiring fact-finding by the Court.  *See, e.g., Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, _ U.S. _, 137 S. Ct. 1312, 1316 (2017) ("[W]here jurisdictional questions turn upon further factual development, the trial judge may take evidence and resolve relevant factual disputes."); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449, 453 (D.C. Cir. 1990) (holding "[f]urther fact-finding is clearly needed" and remanding for discovery and fact-finding).

Illustrating the need are the following examples, each of which relates to an element of the expropriation exception to the Foreign Sovereign Immunities Act ("FSIA"). Indeed, every element of that exception is impacted by the need for discovery.

**"Core Function" of Federal Office of Culture**

As Hicham's responsive brief makes clear, the FSIA's expropriation exception requires a showing that the Swiss Federal Office of Culture ("FOC") is an *agency or instrumentality* of the State.  (28 U.S.C. §1605(a)(3).)  In their reply brief, the FOC and the Customs Administration ("Customs") urge the Court to apply the "core function test" to determine whether FOC is an agency or

---

[1]   This letter is submitted on behalf of Plaintiffs Beirewaltes as well, who joined in Hicham's responsive papers.

**MINTZ**

Honorable Ronnie Abrams, U.S.D.J.
May 7, 2019
Page 2



instrumentality of Switzerland.[2] That test would require the Court to determine whether the core functions of the FOC are "predominantly governmental or commercial." *See Garb v. Republic of Poland*, 440 F.3d 579, 594 (2d Cir. 2006). There has been no discovery into the predominant function of the FOC, yet the FOC baldly claims that the FOC is an "integral part of the Swiss Confederation" and has "self-evidently governmental functions." (*See* ECF No. 48 at 6.)

It is hardly self-evident that the *core* function of the FOC – which undeniably has substantial commercial functions (*see* ECF No. 45 at 15-17) – is predominantly governmental. If the Court is inclined to give any weight to FOC's unsworn argument about its core function (as FOC's counsel urges), Hicham should be afforded a fair opportunity to test that assertion through jurisdictional discovery followed by judicial fact-finding.

### FOC Owns or Operates Plaintiffs' Property

Proof that the agency or instrumentality owns or operates the property in question is another element of the expropriation exception. The Complaint alleges that the FOC "has initiated and overseen the seizure of the … Property" (Compl. ¶24), and Hicham's responsive brief further explained how the FOC owns or operates his property, citing evidence in support. (ECF No. 45 at 17-19.)

In their reply, the Defendants counter that Hicham's allegations and the Swiss laws cited in Hicham's responsive brief are outweighed by the FOC's evidence. (ECF 48 at 1-2.)[3] That assertion tees up a factual issue that cannot be resolved without discovery.

### Arbitrariness of the Seizure

Hicham's responsive brief also argues that Defendants acted so arbitrarily that they effected a taking of his property in violation of international law, stripping Defendants of immunity. 28 U.S.C. ¶1605(a)(3). Among the many facts cited in support, Hicham noted that the Defendants

---

[2]   FOC argues that Plaintiffs failed to address the core function test, but in fact Plaintiffs' responsive briefs addressed that test in detail.  (ECF No. 45 at 15-17.)

[3]   The FOC also argues that Hicham failed to plead facts sufficient to satisfy the standard set by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), but that argument is misplaced for two reasons. First, Hicham did not have an obligation to plead facts sufficient to show that the Court has jurisdiction, which is an affirmative defense that may be waived by the sovereign. *See, e.g.*, 28 U.S.C. ¶1605(a)(1); *Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277-78 (2d Cir. 1984). Second, the FOC did not move to dismiss under Rule 12(b)(6) for failure to allege facts sufficient to state a cause of action. (ECF Doc No. 35.) In any event, it is clear that the factual issues raised by the FOC's motion to dismiss cannot be resolved without discovery.

**MINTZ**

Honorable Ronnie Abrams, U.S.D.J.
May 7, 2019
Page 3



precipitously released approximately 5,000 of those items *without rationale, right after the Beierwaltes' Complaint was filed* in August 2018. (ECF No. 45 at 1, 7-13.)⁴

In its reply, Geneva argues that (a) the seizure of 12,000 items was based on "documented 'irregularities'" and (b) the subsequent release of 5000 items illustrates that the Swiss legal process is working. (ECF No. 50 at 2.) Those two assertions are self-contradicting; the release of 5000 pieces 18 months after the seizure suggests there was no basis for the seizure as to those items (*i.e.*, that the Swiss legal process is not working). In support of its argument that the "legal process is working … properly", Geneva also argues (without supporting evidence) that the 5000 pieces were released "after determining their lawful ownership." (ECF No. 50 at 1.)⁵ That argument is contradicted by a Swiss prosecutor's letter dated August 8, 2018, which states the reason for the release of the 5000 as follows: "This partial lifting of sequester is due to the foreseeable material impossibility of conducting all of the inspections necessary to allay the suspicion of unlawful origin of some items. It may not be relied upon as evidence of the lawful origin of the items." (ECF No. 46-20). If the Court is inclined to give any weight to the Defendants' efforts to neutralize the significance of the release of the 5000 items, we require discovery to lay bare the true significance of that release.

In addition, after Hicham filed his responsive brief, the Defendants acted in new ways that demonstrated the arbitrariness of their seizure of the 12,000 items. Specifically, Customs sent a letter dated April 3, 2019, to Phoenix Ancient Art SA (a copy of which is attached as Exhibit B to this letter) (the "Customs Letter") denying a request made in April 2017 to release certain items. The Customs Letter cites the Swiss Cultural Property Transfer Act ("CPTA") and questions the provenance – *i.e.*, the chain of ownership – before Phoenix acquired those items. The Customs Letter further demonstrates the arbitrariness of the seizure because Customs (a) cites independent evidence that the items were acquired by a private party long before the effective date of the CPTA (the CPTA expressly is not retroactive), and (b) cites no evidence that any of those items was stolen or improperly imported.

---

⁴ The timing of that release, which occurred eighteen months after the seizure and upon the filing of the Beierwaltes' action, is highly suspicious. Moreover, Defendants released no other items for the next eight months, and then in April 2019 – again, coincidentally after Plaintiffs had filed briefs responding to Defendants' motions to dismiss – released another 100+ items. (*See* Ex. A to this letter, a letter dated April 11, 2019, identifying six items of Hicham Aboutaam that recently were released.)

⁵ Geneva argues inaccurately that Plaintiffs made such an admission. (ECF No. 50 at 1.) Plaintiffs merely cited the prosecutor's letter, which does not support Geneva's argument as to the reason for the release of the antiquities.

**MINTZ**

Honorable Ronnie Abrams, U.S.D.J.
May 7, 2019
Page 4



**Geneva's Alleged Independence**

In an effort to avoid the impact of the FSIA's expropriation exception, Geneva argues that it is a separate sovereign independent from Switzerland. (ECF No. 50 at 5, 7.) Likewise, Customs in its motion and reply brief denies having any role in the seizure of the 12,000 items (as has FOC), claiming that the Geneva prosecutor has sole authority. (*See* ECF No. 36 at 4-8; ECF No. 48 at 1-2 (arguing that Customs had no authority to direct the Geneva prosecutor)). However, there is evidence that Customs (a federal administration) was and remains involved in the seizure of and determination of whether to release the 12,000 items that were seized in February 2017.

The Customs Letter shows that agencies other than the Geneva prosecutor have a role in determining whether to release any of the seized items. Moreover, in April 2017, Customs issued a confidential "mandate" to three experts in which Customs stated that it "operates in close collaboration with the Public Ministry of the Republic and Canton of Geneva" in its "investigation." (*See* Exhibit C to this letter at 1.) The alleged separateness of the defendants, therefore, is an issue of fact to be investigated through discovery.

For the foregoing reasons, the Court should permit Hicham Aboutaam to engage in jurisdictional discovery.

\*   \*   \*

Based on the arguments raised in the reply briefs filed by Defendants, Plaintiffs also respectfully request that the Court hear oral argument on Defendants' motions to dismiss.

Respectfully submitted,

/s/ Kevin N. Ainsworth

Kevin N. Ainsworth
*Attorneys for Hicham Aboutaam*


**Joining in this request**

/s/ Nathaniel Z. Marmur
Nathaniel Z. Marmur
*Attorneys for Plaintiffs Lynda and William Beierwaltes*


Enclosures

cc:   All counsel of record