USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/24/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HICHAM ABOUTAAM,

                Plaintiff,

-against-

L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE, ET AL.,

                Defendants.

18-CV-8248 (RA)

---

LYNDA BEIERWALTES, ET AL.,

                Plaintiffs,

-against-

L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE, ET AL.,

                Defendants.

18-CV-11167 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiffs Hicham Aboutaam and Lynda and William Beierwaltes bring these related actions for, *inter alia*, conversion and declaratory judgment as to title against Defendants the Federal Office of Culture of the Swiss Confederation (the "FOC"), the Federal Customs Administration of the Swiss Confederation (the "FCA"), and the Republic and Canton of Geneva. Plaintiffs, who maintain collections of ancient art, allege that Defendants unlawfully ordered their antiquities to remain frozen in a warehouse in Geneva pending the outcome of a criminal investigation into the antiquities' origins. Before the Court are Defendants' motions to dismiss the

complaints, principally on the ground that Defendants are immune from suit under the Foreign Sovereign Immunities Act. For the reasons that follow, Defendants' motions are granted.

## BACKGROUND[1]

Hicham Aboutaam is an international dealer of ancient art who is a citizen and resident of New York. Together with his brother, Ali Aboutaam, he co-founded Phoenix Ancient Art S.A. ("Phoenix"), an art gallery which is located in Geneva, Switzerland. Hicham also manages an affiliated gallery, Electrum, which is located in New York. Lynda and William Beierwaltes are art collectors who are citizens and residents of Colorado. In 2006, they granted Phoenix the exclusive right to sell their antiquities collection, and in 2013, they filed for Chapter 11 bankruptcy and designated Phoenix as the antiquities dealer of their bankruptcy estate. As the Beierwaltes' dealer, Phoenix was able to sell some, but not all, of the Beierwaltes' antiquities. At the time of the events giving rise to this lawsuit, 18 of the Beierwaltes' antiquities remained in Phoenix's possession in Geneva.

On February 28, 2017, approximately 1,200 of Hicham's antiquities, and 18 of the Beierwaltes' antiquities, were seized as part of a larger seizure of approximately 12,000 objects and frozen by Swiss authorities in the Geneva warehouse where they were stored. The items were seized pursuant to two search and seizure orders, one issued by the Geneva Prosecutor and one issued by the FCA.[2] The orders referenced complaints from both the FCA and the FOC, which described the "sudden and suspicious" movement of cultural property and identified various

---

[1] The factual background is taken from the complaints and the exhibits attached thereto.

[2] The FCA and the FOC argue that Plaintiffs fail to adequately allege that either the FCA or the FOC directed, or were otherwise responsible for, the seizure of Plaintiffs' property. Because, as explained below, the Court dismisses the complaints as to all Defendants on other grounds, the Court does not here decide whether Plaintiffs' complaints adequately linked the FCA and FOC to the seizure of their property.

antiquities of suspicious provenance, or chain of title. Specifically, the warrants stated that on December 20, 2016, the FCA intercepted two individuals at the border in possession of a fraudulently imported antique oil lamp. Upon further investigation, the FCA discovered that property was moved out of a Geneva warehouse in the early morning hours of December 21, 2016. Ali Aboutaam's wife, Biliana Aboutaam, was identified on surveillance cameras in connection with the movement of that property. The warrants explained that criminal and customs inquiries were being conducted into potential violations of Swiss law regarding the importation and exportation of cultural property.

In May of 2018, Plaintiffs attempted to secure the release of their property by submitting a demand letter to the Geneva Prosecutor. In response, the Geneva Prosecutor informed Plaintiffs that their property could not yet be released because the investigation was ongoing. The Geneva Prosecutor requested Plaintiffs' cooperation in the investigation and further informed them that they had the right to appeal pursuant to the relevant provisions of the Swiss Criminal Procedure Code. Rather than appeal pursuant to those procedures, Plaintiffs wrote a subsequent letter demanding the release of their property and threatening to sue Defendants in the United States. Both the Geneva Prosecutor and the FCA responded, reiterating that the investigations were ongoing and again requesting Plaintiffs' cooperation. The Geneva Prosecutor further noted that, if Plaintiffs were to file suit in the United States, Defendants would contest the legitimacy of the suits as well as the jurisdiction of the American courts.

Plaintiffs then brought suit in the United States. On August 8, 2018, the Beierwaltes filed a complaint in the United States District Court for the District of Colorado, bringing claims against Defendants for declaratory judgment as to title, conversion, unjust enrichment, and civil theft. That same day, the Geneva Prosecutor partially lifted the seizure as to approximately 5,000 of the

seized objects. On September 11, 2018, Hicham filed a complaint in this Court, similarly bringing claims against Defendants for declaratory judgment as to title, conversion, and unjust enrichment. On November 12, 2018, the United States District Court for the District of Colorado granted Defendants' motion to transfer the Beierwaltes' case to the Southern District of New York. This Court subsequently accepted the Beierwaltes' case as related to the Hicham action.

Defendants in both actions filed the instant motions to dismiss. Their principal argument is that the Court lacks subject matter jurisdiction over these cases because they do not fall within any of the exceptions to foreign sovereign immunity outlined in the Foreign Sovereign Immunities Act. Defendants also argue, in the alternative, that the actions should be dismissed under the Act of State Doctrine and principles of comity. After briefing on Defendants' motions was complete, Plaintiffs requested jurisdictional discovery. The Court held oral argument on Plaintiffs' request for discovery and Defendants' motions to dismiss.

## STANDARD OF REVIEW

"In a motion to dismiss on FSIA grounds, the movant must first make a *prima facie* showing that it is a 'foreign state' under the Act." *Freund v. Republic of France*, 592 F. Supp. 2d 540, 552 (S.D.N.Y. 2008). "Once the movant makes that showing, the opposing party 'has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted[.]'" *Id.* (quoting *Cabiri v. Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999)). "Where the plaintiff satisfies its burden that an FSIA exception applies, the foreign sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply." *Peterson Energia Inversora S.A. v. Argentine Republic and YPF S.A.*, 895 f.3D 194, 204 (2d. Cir. 2018).

4

"On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).

## DISCUSSION

### I. Immunity

Defendants argue that the complaints must be dismissed because Defendants are immune from suit under the Foreign Sovereign Immunities Act (the "FSIA" or the "Act"). The FSIA provides the "sole basis for obtaining jurisdiction over a foreign government." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). "Under the FSIA a foreign sovereign and its instrumentalities are immune from suit in the United States courts unless a specific statutorily defined exception applies." *Zappia*, 215 F.3d at 247. "Absent such an exception, the immunity conferred by the FSIA strips courts of both subject matter and personal jurisdiction over the foreign state." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 199 (2d Cir. 2016).

It is undisputed that Defendants are "foreign state[s]" under the FSIA, presumptively immune from suit unless one of the Act's exceptions apply. 28 U.S.C. § 1604. Plaintiffs argue, however, that one of the statutory exceptions—the "expropriation exception" or "takings exception"—exempts Defendants from immunity in this case. This exception states that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or

5

instrumentality is engaged in a commercial activity in the United States[.]" 28 U.S.C. § 1605(a)(3).

Thus, "in order to establish jurisdiction pursuant to the FSIA expropriation exception, a plaintiff must show that: (1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied." *Zappia*, 215 F.3d at 251. As to the nexus requirements, a plaintiff must show either "that property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," or "that property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." *Garb v. Republic of Poland*, 440 F.3d 579, 588 (2d Cir. 2006).

Defendants argue that Plaintiffs have failed to meet their burden of showing that the property at issue here was "taken in violation of international law." The Court agrees. "[A] federal court[] can maintain jurisdiction to hear the merits of a case only if [it] find[s] that the property in which the party claims to hold rights was indeed 'property taken in violation of international law.'" *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017). "[A] party's nonfrivolous, but ultimately incorrect, argument that property was taken in violation of international law is insufficient to confer jurisdiction." *Id.* Although the FSIA does not elaborate on what constitutes property "taken in violation of international law," the legislative history of the Act explains that the FSIA was intended to "codify the . . . 'restrictive' principle of sovereign immunity," which sought to "recognize immunity in cases based on a foreign state's public acts, but not in cases based on commercial or private acts." H.R.Rep. No. 19-1487, at 7 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6618; *see also Garb*, 440 F.3d at 585–86. Consistent with this principle, the Second Circuit has explained that "the phrase 'taken in violation

6

of international law' refers to 'the nationalization or expropriation of property without payment of the prompt adequate and effective compensation required by international law,' including 'takings which are arbitrary or discriminatory in nature.'" *Zappia*, 215 F.3d 251 (quoting H.R.Rep. No. 19-1487, at *19–20 (1976)). Thus, "[a] violation of international law . . . requires . . . that the taking not be for a public purpose, or that the taking be discriminatory, or not accompanied by provision for just compensation." *Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, 12-CV-7316 (LGS), 2014 WL 288705, at *7 (S.D.N.Y. Jan. 27, 2014) (citing *Restatement (Third) of Foreign Relations Law* § 712 (1987)).

The conduct at issue here does not satisfy any of these requirements. First, the property was seized in connection with an ongoing criminal investigation, which serves a public purpose, not a commercial or private one. *Cf. Credit Suisse v. U.S. District Court for the Cen. Dist. of Cal.*, 130 F.3d 1342, 1344 (9th Cir. 1997) (explaining, for the purposes of the Act of State Doctrine, that a foreign government's asset freeze orders, issued pending the results of a criminal investigation, were "not the type of act that a private person can exercise" and were "paradigmatically sovereign in nature."). Second, the seizure does not appear to have been arbitrary or discriminatory, since, as described above, the property was seized pursuant to search and seizure orders that articulated a non-discriminatory basis for suspecting that individuals connected to the seized property had violated Swiss law. Finally, as the property was temporarily seized pending the results of an ongoing criminal investigation, and has not been frozen for an "extended or indefinite period," Plaintiffs are not owed compensation for their property at this juncture. *See Restatement (Third) of Foreign Relations Law* § 712, Rep. Note 6 ("a temporary deprivation of control, as by a freezing of assets . . . is probably not a taking but may become one if deprivation is for an extended or indefinite period."); *Chettri v. Nepal Bangladesh Bank Ltd.*, 10-CV-8470 (PGG), 2014 WL

4354668, at *18 (S.D.N.Y. Sept. 2, 2014), *affirmed* 834 F.3d 50 (2d Cir. 2016) ("Plaintiffs cite no authority suggesting that a freeze of assets for a two year period—while an active criminal investigation is proceeding—constitutes a taking for purposes of the 'takings' exception of the FSIA."); *Cf. Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006) (For Fifth Amendment purposes, "[w]hen property has been seized pursuant to the criminal laws . . . such deprivations are not 'takings' for which the owner is entitled to compensation.").

The temporary restriction on the movement of property, pending the outcome of a criminal investigation, has, in analogous circumstances, been found not to constitute a "tak[ing] in violation of international law." For example, in *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 58 (2d Cir. 2016), the defendants—agencies and instrumentalities of the Nepali government—froze the plaintiffs' financial assets for more than two years pending the outcome of an ongoing money laundering investigation. The plaintiffs argued that the asset freeze constituted a taking in violation of international law, such that the defendants could be sued pursuant to the expropriation exception to the FSIA. The Second Circuit rejected the argument, noting that the plaintiffs had failed to plausibly establish that the account freeze "was a taking, much less a taking in violation of international law," and that "[u]nsurprisingly, [the plaintiffs] offer[ed] no authority for the proposition that a routine law enforcement action . . . constitutes a taking within the meaning of § 1605(a)(3)." *Id.* Similarly, in *Hilsenrath v. Swiss Confederation*, No. C 07-02782 WHA, 2007 WL 3119833, at *4 (N.D. Cal. Oct. 23, 2007), *affirmed* 402 F. App'x 314 (9th Cir. 2010) (memorandum), the Northern District of California held that the takings exception did not apply to the freezing of assets pending the outcome of a criminal investigation, noting that it was "frivolous to claim that freezing assets during a legitimate criminal investigation violated international law."

Plaintiffs, citing the legislative history of the FSIA and language from the Circuit's decision in *Zappia*, nevertheless argue that the expropriation exception applies here because the seizure in this case was "arbitrary." *See* 215 F.3d at 251 ("the phrase 'taken in violation of international law' refers to 'the nationalization or expropriation of property without payment of the prompt adequate and effective compensation required by international law,' including 'takings which are *arbitrary or discriminatory in nature.*'") (emphasis added). In support, they point out that Defendants' warrants specifically identified only seven items of suspicious provenance, and did not articulate a specific reason to suspect each of the 12,000 items that were seized. They further rely on the fact that the Swiss authorities released approximately 5,000 of the seized items on the same day that the Beierwaltes filed their complaint in this action to suggest that the investigation is proceeding in an arbitrary manner. Plaintiffs, however, offer no authority to support the proposition that either of these allegations renders the seizure arbitrary in violation of international law. To the contrary, that the seizure has been partially lifted suggests that the investigation remains ongoing and that the items are being released when it is determined that there is no further cause for their seizure. Moreover, "[u]nder the principles of international comity, United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States." *Federal Treasury Enterprise Sojuzplodoimport, OAO v. Spirits Int'l B.V.*, 809 F.3d 737, 742–43 (2d Cir. 2016). Here—where the items were seized pursuant to warrants articulating a non-discriminatory justification for their seizure—neither the timing of the items' release nor the level of specificity of the warrants furnishes an appropriate basis to scrutinize a foreign sovereign's ongoing criminal investigation. As in *Chettri*, the "complaints['] conclusory criticisms of the

manner in which [Switzerland] has conducted its investigation are insufficient to prove a violation of international law." *Chettri*, 834 F.3d at 58.

Plaintiffs also argue that the seizure of their property violated international law because Defendants did not follow the procedures outlined in the UNESCO Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property (the "Convention") or Switzerland's federal law implementing the Convention, the Cultural Property Transfer Act ("CPTA"). The procedures Plaintiffs refer to, however, apply when a foreign nation has requested repatriation of cultural property—which Plaintiffs do not allege occurred here. *See* CPTA Art. 9; Convention Art. 7. Nothing in either the UNESCO Convention or the CPTA precludes a foreign sovereign from temporarily seizing property within its own borders, pending the outcome of an investigation into suspected violations of that sovereign's laws. To the extent that Plaintiffs argue that their property falls outside the scope of the CPTA (a Swiss federal law), those allegations go to whether the seizure comported with the requirements of Swiss law, but do not suggest that the seizure was arbitrary in violation of international law. Indeed, under principles of international law, ordinarily "a claimant cannot complain that a taking or other economic injury has not been fairly compensated, and hence violates international law, unless the claimant has first pursued and exhausted domestic remedies in the foreign state that is alleged to have caused the injury." *Greenpeace, Inc. v. State of France*, 946 F. Supp. 773, 783 (C.D. Cal. 1996). As explained above, Plaintiffs here have neither participated in Defendants' investigation nor pursued the appellate process available to them in Switzerland. Neither the Convention nor the CPTA furnishes any basis to find that the property at issue here was "taken in violation of international law" within the meaning of the FSIA.

Because the property at issue in these cases was not taken in violation of international law, the expropriation exception to the FSIA does not apply. Since Plaintiffs do not argue that Defendants are subject to suit under any other exception to the FSIA, these cases must be dismissed for lack of subject matter and personal jurisdiction. The Court, accordingly, does not reach Defendants' alternative arguments for dismissal based on the Act of State Doctrine and principles of comity.[3] *See Freund*, 592 F. Supp. 2d 540, 551 (S.D.N.Y. 2008) ("[B]ecause the act of state doctrine is substantive rather than jurisdictional, courts may not consider its application prior to establishing the subject matter jurisdiction exists.") (internal citations omitted).

## II. Jurisdictional Discovery

The Court also rejects Plaintiffs' request for jurisdictional discovery. "Because sovereign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation, a court must be circumspect in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA." *Arch Trading Corp.*, 839 F.3d at 206–07. "Accordingly, a district court may deny jurisdictional discovery demands made on a foreign sovereign if the party seeking discovery cannot articulate a reasonable basis for the court first to assume jurisdiction." *Id.*

Here, Plaintiffs assert that jurisdictional discovery is necessary in order to determine whether the seizure of Plaintiffs' property was arbitrary.[4] They again contend that Defendants'

---

[3] Nor does the Court reach Defendants' arguments concerning the property's nexus to the United States. Because the property at issue here was not taken in violation of international law, the case must be dismissed irrespective of whether either of the nexus requirements is met. *See Smith Rocke*, 2014 WL 288705, at *7 (holding that it was "irrelevant" whether the defendants were agencies or instrumentalities of the foreign state, or the foreign state itself, because "[t]he expropriation exception cannot apply to foreign states or their agencies or instrumentalities where there is no violation of international law.").

[4] Plaintiffs have also requested discovery related to the property's nexus to the United States, specifically with respect to: (1) the core function of the FOC, (2) whether the FOC owns or operates Plaintiff's property, and (3)

11

release of approximately 5,000 seized objects immediately after the filing of the Beierwaltes' complaint in this action demonstrates that Defendants acted arbitrarily, thus providing a basis for the Court to assume jurisdiction and permit discovery. The Court again disagrees. Contrary to Plaintiffs' contentions, and as explained above, the release of the seized items does not indicate that the seizure was arbitrary—if anything, it suggests that Defendants are continuing to pursue their investigation and are releasing the seized property when they deem it appropriate to do so. The Court thus does not agree that such actions provide a reasonable basis for the Court to assume jurisdiction over these cases. Moreover, the discovery Plaintiffs seek—an inquiry into the purported arbitrariness of a foreign sovereign's ongoing criminal investigation—raises significant international comity concerns that strongly militate against approving Plaintiffs' request for jurisdictional discovery under the circumstances. *See Freund*, 592 F. Supp. 2d at 564 (denying request for jurisdictional discovery in part because "[a]ppropriate deference to principles of international comity strongly suggests that discovery is inappropriate under these circumstances."). For those reasons, Plaintiffs' request for jurisdictional discovery is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted. Plaintiffs' request for jurisdictional discovery is denied. The Clerk of Court is respectfully directed to terminate all pending motions and to close these cases.

SO ORDERED.

Dated:    September 24, 2019
           New York, New York

Ronnie Abrams
United States District Judge

---

whether Geneva is an independent sovereign. Because, as explained above, the Court lacks jurisdiction over these cases whether or not the nexus requirement is satisfied, Plaintiffs' request for discovery on these topics is denied.